***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act. The Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. Plaintiff was an employee of OEM America. The workers' compensation carrier is the Phoenix Insurance Company.
3. Plaintiff was involved in an automobile collision on September 10, 2004.
4. The following items were stipulated into evidence:
 a. The Pre-Trial Agreement marked as stipulated exhibit 1.
 b. Industrial Commission Forms filed in this matter, marked as stipulated exhibit 2.
 c. Plaintiff's responses to discovery marked as stipulated exhibit 3.
 d. Defendants' responses to discovery marked as stipulated exhibit 4.
 e. A group of plaintiff's medical records, collectively marked as stipulated exhibit 5.
 ***********
Entered into evidence during the hearing before the deputy commissioner were three pictures of the car in question dated September 28, 2005, marked as defendants' 1A, 1B, and 1C, respectively. Also entered into evidence during the hearing was an 11-page car damage estimate marked as plaintiff's exhibit 1.
 *********** ISSUES PRESENTED
Whether plaintiff suffered a compensable injury by accident or specific traumatic incident on September 10, 2005, and, if so, to what, if any medical treatment and/or workers' compensation disability benefits are plaintiff entitled?
 *********** *Page 3 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On September 10, 2004 plaintiff was working for defendant as a secretary when she was involved in a low-speed automobile collision. On the date of the collision, plaintiff was running a company errand for defendant when her vehicle was struck by another car in a gas station parking lot at approximately five miles per hour. Damage to plaintiff's vehicle consisted of a ding approximately one-inch in diameter to the driver's side rear-quarter panel. Repairs were never made.
2. Plaintiff's testimony as to the location of the damage to the automobile is inconsistent with the photographs and damage estimate in evidence. Furthermore, the police report of the accident reveals that impact was made at five miles per hour, not the 10-20 miles per hour that plaintiff reported to medical personnel.
3. Plaintiff returned to work on the day of the accident in the automobile that she was driving at the time of the accident. Plaintiff did not require any time off of work and did not seek medical treatment until the evening of September 13, 2004.
4. On September 13, 2004 plaintiff sought treatment at the Heritage Hospital emergency room. She reported being involved in a rear-end collision with an impact of 10-20 miles per hour the prior Friday. Following a physical examination, she was diagnosed with a low back strain
5. On September 16, 2004 plaintiff presented at Carolina Regional Orthopedics for examination by Dr. Alberto d'Empaire. Plaintiff reported her September 10, 2004 accident, explaining that her car was struck on the passenger door. Dr. d'Empaire noted that x-rays were *Page 4 
not taken at Heritage Hospital, and he also noted that an MRI would not be necessary. He counseled plaintiff that her injury was not significant. He advised that she could continue working her regular duties.
6. On October 25, 2004, Dr. d'Empaire recommended that plaintiff have an MRI. On November 3, 2004, Dr. d'Empaire noted that the MRI results revealed a minimal right lateral disc bulge without any frank herniation at L4-5. A course of epidural steroid injections was recommended and administered.
7. On or about December 21, 2004, Bobby Hall, Jr., Vice President of defendant, learned that defendant's Greenville office had received a returned check made out to plaintiff in the amount of $1,500.00. An investigation of the returned check later revealed that it had been made out to plaintiff by her stepfather after she had completed a cash advance loan in his name. On our about December 22, 2004, plaintiff's daily bank deposit was short by approximately $800.00. Mr. Hall addressed the shortage with plaintiff. Plaintiff explained that she had lost a few deposit tickets. An investigation was performed to evaluate the shortage further, and, in response to the results of the investigation, plaintiff was terminated for suspicion of embezzlement on December 28, 2004.
8. Plaintiff was able to work without missing time due to the automobile accident from September 10, 2004 until the date of her termination.
9. Plaintiff testified that Dr. d'Empaire saw her on December 28, 2004 and that he wrote her out of work at that time. Plaintiff further testified that she could produce a medical note evidencing this visit, but plaintiff failed to do so. Dr. d'Empaire testified that he did not see plaintiff between the dates of December 2, 2004 and December 30, 2004. *Page 5 
10. On December 30, 2004 plaintiff returned to Dr. d'Empaire's office. At that time Dr. d'Empaire did not know plaintiff had been terminated and remained of the opinion that plaintiff could continue to work at her regular duties.
11. On January 4, 2005 plaintiff called Dr. d'Empaire's office and spoke with a clinician. She requested a retroactive note taking her out of work from December 28, 2004 until she could return for an evaluation in February. Plaintiff did not advise Dr. d'Empaire's office that she had been terminated, but instead related that she was having difficulty working due to her physical condition. Relying on plaintiff's representations, Dr. d'Empaire provided the note removing plaintiff from work.
12. On February 21, 2005, plaintiff was evaluated by Dr. David Miller for the first time. On February 23, 2005 Dr. Miller performed a right-sided hemilaminectomy, foraminotomy, and partial medial facetectomy at L4-5. Dr. Miller testified that during the surgery it was discovered that plaintiff did not have a herniated or bulging disc that needed removal. Dr. Miller testified that plaintiff's nerve root compression was caused by enlarged facet joints. He testified that this is a condition that occurs due to joints becoming enlarged or thickened over a period of years. He further testified that plaintiff likely had inherently large joints.
13. Plaintiff subsequently underwent a post-operative MRI that revealed no evidence of disc herniation or stenosis. On September 19, 2005 Dr. Miller noted that plaintiff had undergone a CT myelogram that revealed no encroachment. On August 30, 2005 plaintiff underwent EMG studies that revealed normal readings.
14. Plaintiff testified that she applied for and received unemployment benefits following her termination from defendant. Plaintiff further testified that three weeks prior to the *Page 6 
date of the hearing before the deputy commissioner she returned to work with a subsequent employer in a managerial position at a higher salary than she received from defendant before her injury.
15. Jessica Boykin, plaintiff's former co-worker, testified that prior to September 10, 2004, plaintiff had advised her that plaintiff had experienced back pain after vacuuming at home. At the time of this conversation plaintiff and Ms. Boykin were friends who talked often.
16. Dr. Miller and Dr. d'Empaire testified that they would relate plaintiff's back condition to her accident on September 10, 2004. However, they both testified that they based their opinions in large part on plaintiff's report of the accident, as well as on the fact that plaintiff had not reported any previous back problems. As plaintiff's testimony regarding the automobile collision is inconsistent with the greater weight of the competent evidence of record, the Full Commission gives little weight and credibility to plaintiff's testimony.
17. Plaintiff was terminated for reasons for which a non-disabled employee would have been terminated. Plaintiff's termination was unrelated to her workers' compensation injury.
18. Plaintiff has not proven by the greater weight of the evidence that she sustained any type of compensable injury on or about September 10, 2004.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. § 97-2(6); Harveyv. Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549,disc. *Page 7 rev. denied, 325 N.C. 706, 388 S.E.2d 454(1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert. denied 283 N.C. 585,197 S.E.2d 873 (1973). Furthermore, the mere fact of injury does not of itself establish the fact of a compensable accident. Key v. WagnerWoodcraft, Inc., 33 N.C. App. 310, 235 S.E.2d 254 (1977).
2. Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. HickoryBus. Furn., 353 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, the expert medical testimony was based on inaccurate histories related by plaintiff.
3. In this case, plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course of her employment with defendant on or about September 10, 2004, or that she sustained a compensable specific traumatic incident from the work assigned on or about September 10, 2004. N.C. Gen. Stat. § 97-2(6); Harvey v. RaleighPolice Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev.denied, 325 N.C. 706, 388 S.E.2d 454(1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert denied 283 N.C. 585,197 S.E.2d 873 (1973).
4. Furthermore, plaintiff has failed to prove by the greater weight of the evidence that she has been or is unable to earn the same wages she earned before September 10, 2004 as a result of the automobile collision on September 10, 2004. N.C. Gen. Stat. §§ 97-2(9); 97-29; 97-30; Russellv. Lowe's Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
5. Plaintiff's termination from employment with defendant is attributable to reasons, unrelated to the alleged injury on September 10, 2004, for which any non-injured employee *Page 8 
would have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472, S.E.2d 397 (1996).
6. Given the foregoing, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
This the 14th day of November 2007.
S/______________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1